# TODD & WELD LLP

ATTORNEYS AT LAW
28 STATE STREET
BOSTON, MASSACHUSETTS  02109

KEVIN T. PETERS
Email:  kpeters@toddweld.com

TELEPHONE:  (617) 720-2626
FACSIMILE:  (617) 227-5777
www.toddweld.com

April , 2003

**VIA HAND DELIVERY**
Clerk's Office
United States District Court
For the District of Massachusetts
John Joseph Moakely U.S. Courthouse
1 Courthouse Way
Boston, MA 02210

  Re: FleetBoston Financial Corporation, et al. v. Eric E. Alt, et al
     Docket No.: 03-10597

Dear Sir or Madam:

  Enclosed for filing please find the original Certified Docket of the Superior Court relative to the above referenced matter.

          Sincerely,

          Kevin T. Peters

cc: Laurence S. Moy, Esq. (w/out enclosure)
   Joseph L. Kociubes, Esq. (w/out enclosure)
   S. Elaine McChesney, Esq. (w/out enclosure)

DOCKETED

*Suffolk Superior Civil # 03-1378*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FLEETBOSTON FINANCIAL CORPORATION, FLEET SECURITIES, INC. ROBERTSON STEPHENS GROUP, INC., and ROBERTSON STEPHENS, INC., <br><br>            Plaintiffs, <br><br>    v. <br><br> ERIC E. ALT, MICHAEL BARR, J.J. BEAGHAN, BRIAN S. BEAN, CHARLES BOLTON, VINCENT BOWEN III, RICHARD A. BRAND, CLARK CALLANDER, GEORGENE CARAMBAT, MICHAEL CASEY, JEFFREY W. COLIN, ALEX DEAN, CHRISTOPHER DODGE, DAVID FULLERTON, PHILIP GARDNER, JONATHAN GOLDMAN, CHRISTOPHER W. GREER, TONY HAERTL, GREGORY C. HOLMES, FREDERICK M. HUGHES, DANIEL HURWITZ, ANDREW KAYE, MAUREEN McCARTHY, KEVIN McGINTY, TODD H. McWILLIAMS, SAMUEL A. MORSE, AGNES MURPHY, DIANE P. MURPHY, DAVID O'BRIAN, JOSEPH PIAZZA, MICHAEL P. PERRELLA, LARRY REHMER, DAVID REILLY, JOHN T. ROSSI, MARK J. SALTER, SCOTT SCHARFMAN, ALLEN SMITH, SCOTT SULLIVAN, STEVEN TISHMAN, TED E. TOBIASON, DANIEL P. WHITE III, JEFF WINAKER, and THE NEW YORK STOCK EXCHANGE, INC., IN ITS CAPACITY AS AN ARBITRATION FORUM, <br><br>            Defendants. | **03-10597 EFH** <br><br> CIVIL ACTION NO. _____ |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1446, defendants Eric E. Alt, Michael Barr, J.J. Beaghan,

Brian S. Bean, Charles Bolton, Vincent Bowen III, Richard A. Brand, Clark Callander, Georgene

*Suffolk Superior Civil # 03-1378*

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.

*U.S. DIST #*
*03-10597EFH*

SUPERIOR COURT
DEPARTMENT OF THE
TRIAL COURT

BUSINESS SECTION

|  |  |
|---|---|
| FLEETBOSTON FINANCIAL CORPORATION, FLEET SECURITIES, INC. ROBERTSON STEPHENS GROUP, INC., and ROBERTSON STEPHENS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ERIC E. ALT, MICHAEL BARR, J.J. BEAGHAN, BRIAN S. BEAN, CHARLES BOLTON, VINCENT BOWEN III, RICHARD A. BRAND, CLARK CALLANDER, GEORGENE CARAMBAT, MICHAEL CASEY, JEFFREY W. COLIN, ALEX DEAN, CHRISTOPHER DODGE, DAVID FULLERTON, PHILIP GARDNER, JONATHAN GOLDMAN, CHRISTOPHER W. GREER, TONY HAERTL, GREGORY C. HOLMES, FREDERICK M. HUGHES, DANIEL HURWITZ, ANDREW KAYE, MAUREEN McCARTHY, KEVIN McGINTY, TODD H. McWILLIAMS, SAMUEL A. MORSE, AGNES MURPHY, DIANE P. MURPHY, DAVID O'BRIAN, JOSEPH PIAZZA, MICHAEL P. PERRELLA, LARRY REHMER, DAVID REILLY, JOHN T. ROSSI, MARK J. SALTER, SCOTT SCHARFMAN, ALLEN SMITH, SCOTT SULLIVAN, STEVEN TISHMAN, TED E. TOBIASON, DANIEL P. WHITE III, JEFF WINAKER, and THE NEW YORK STOCK EXCHANGE, INC., IN ITS CAPACITY AS AN ARBITRATION FORUM, <br><br> Defendants. | CIVIL ACTION NO. 03-01378 |

## NOTICE OF FILING OF NOTICE OF REMOVAL

The defendants Eric E. Alt, Michael Barr, J.J. Beaghan, Brian S. Bean, Charles Bolton, Vincent Bowen Iii, Richard A. Brand, Clark Callander, Georgene Carambat, Michael Casey, Jeffrey W. Colin, Alex Dean, Christopher Dodge, David Fullerton, Philip Gardner, Jonathan Goldman, Christopher W. Greer, Tony Haertl, Gregory C. Holmes, Frederick M. Hughes, Daniel Hurwitz, Andrew Kaye, Maureen Mccarthy, Kevin Mcginty, Todd H. Mcwilliams, Samuel A. Morse, Agnes Murphy, Diane P. Murphy, David O'brian, Joseph Piazza, Michael P. Perrella, Larry Rehmer, David Reilly, John T. Rossi, Mark J. Salter, Scott Scharfman, Allen Smith, Scott Sullivan, Steven Tishman, Ted E. Tobiason, Daniel P. White Iii, And Jeff Winaker (collectively "Defendants") in accordance with 28 U.S.C. § 1441(a) & (c) and 28 U.S.C. § 1446(a) herewith file with the Clerk of Courts a copy of its Notice of Removal of this case, attached hereto, which was filed in the United States District Court for the District of Massachusetts on April 1, 2003.

. HEREBY ATTEST AND CERTIFY ON .
APRIL 3, 2003 , THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____

ASSISTANT CLERK.

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the
above document was served upon the
attorney of record for each other party
by mailing ~Fox~ April 1, 2003

Respectfully submitted,

ERIC E. ALT, et al.,

By their attorneys,

_____
Kevin T. Peters (BBO #550522)
Todd & Weld LLP
28 State Street
Boston, MA 02109
(617) 720-2626

2

Of Counsel:

Jeffrey L. Liddle
Laurence S. Moy
Christine Palmieri
David Marek
Liddle & Robinson, L.L.P.
685 Third Avenue
New York, NY 10017
(212) 687-8500

DATED:    April 1, 2003

## CERTIFICATE OF SERVICE

I, Kevin T. Peters, hereby certify that on this 1st day of April 2003, I served a copy of the foregoing on all parties to this action by mailing the same by first class mail, postage prepaid, to all counsel of record.

_____
Kevin T. Peters

3

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the Notice of Removal with Certification of the United States District Court was served up on the attorney of record for each other party this 2nd day of April, 2003 by first class mail.

Kevin T. Peters

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                    SUPERIOR COURT
                                               DEPARTMENT OF THE
                                               TRIAL COURT

                                               BUSINESS SECTION

|  |  |
|---|---|
| FLEETBOSTON FINANCIAL CORPORATION, FLEET SECURITIES, INC. ROBERTSON STEPHENS GROUP, INC., and ROBERTSON STEPHENS, INC., | ) ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| ERIC E. ALT, MICHAEL BARR, J.J. BEAGHAN, BRIAN S. BEAN, CHARLES BOLTON, VINCENT BOWEN III, RICHARD A. BRAND, CLARK CALLANDER, GEORGENE CARAMBAT, MICHAEL CASEY, JEFFREY W. COLIN, ALEX DEAN, CHRISTOPHER DODGE, DAVID FULLERTON, PHILIP GARDNER, JONATHAN GOLDMAN, CHRISTOPHER W. GREER, TONY HAERTL, GREGORY C. HOLMES, FREDERICK M. HUGHES, DANIEL HURWITZ, ANDREW KAYE, MAUREEN McCARTHY, KEVIN McGINTY, TODD H. McWILLIAMS, SAMUEL A. MORSE, AGNES MURPHY, DIANE P. MURPHY, DAVID O'BRIAN, JOSEPH PIAZZA, MICHAEL P. PERRELLA, LARRY REHMER, DAVID REILLY, JOHN T. ROSSI, MARK J. SALTER, SCOTT SCHARFMAN, ALLEN SMITH, SCOTT SULLIVAN, STEVEN TISHMAN, TED E. TOBIASON, DANIEL P. WHITE III, JEFF WINAKER, and THE NEW YORK STOCK EXCHANGE, INC., IN ITS CAPACITY AS AN ARBITRATION FORUM, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

CIVIL ACTION
NO. 03-01378

NOTICE OF APPEARANCE

I, Kevin T. Peters, Esquire, hereby enter my appearance as counsel for the Defendants, in the above-captioned matter as co-counsel to Jeffrey L. Liddle, Esq. and the firm of Liddle & Robinson, LLP.

Respectfully submitted,

_____
Kevin T. Peters, Esq.
(BBO# 550522)
TODD & WELD, LLP
28 State Street
31st Floor
Boston, MA 02109
617-720-2626

Dated: April 1, 2003

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail/hand on _____

MAS-20020121

guen

**Commonwealth of Massachusetts**
SUFFOLK SUPERIOR COURT
Case Summary
Civil Docket

04/02/2003
05:00 PM

## SUCV2003-01378
## FleetBoston Financial Corporation et al v Alt et al

| | | | | | |
|---|---|---|---|---|---|
| **File Date** | 03/24/2003 | **Status** | Disposed: transfered to other court (dtrans) | | |
| **Status Date** | 04/02/2003 | **Session** | BLS2 - CtRm 20 | | |
| **Origin** | 1 | **Case Type** | BE1 - Fraud, business torts, etc | | |
| **Lead Case** | | **Track** | B | | |

| | | | | | |
|---|---|---|---|---|---|
| **Service** | | **Answer** | | **Rule12/19/20** | |
| **Rule 15** | | **Discovery** | | **Rule 56** | |
| **Final PTC** | | **Disposition** | | **Jury Trial** | No |

### PARTIES

**Plaintiff**
FleetBoston Financial Corporation
Active 03/24/2003

**Private Counsel 276360**
Joseph L Kociubes
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110
Phone: 617-951-8000
Fax: 617-951-8736
Active 03/24/2003 Notify

**Private Counsel 329090**
S Elaine McChesney
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110
Phone: 617-951-8000
Fax: 617-951-8736
Active 03/24/2003 Notify

**Plaintiff**
Fleet Securities Inc
Active 03/24/2003

**Private Counsel 276360**
Joseph L Kociubes
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110
Phone: 617-951-8000
Fax: 617-951-8736
Active 03/24/2003 Notify

**Private Counsel 329090**
S Elaine McChesney
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110
Phone: 617-951-8000
Fax: 617-951-8736
Active 03/24/2003 Notify

**Commonwealth of Massachusetts**
SUFFOLK SUPERIOR COURT
Case Summary
Civil Docket

## SUCV2003-01378
## FleetBoston Financial Corporation et al v Alt et al

| | |
|---|---|
| **Plaintiff**<br>Robertson Stephens Group Inc<br>Active 03/24/2003 | **Private Counsel 276360**<br>Joseph L Kociubes<br>Bingham McCutchen LLP<br>150 Federal Street<br>Boston, MA 02110<br>Phone: 617-951-8000<br>Fax: 617-951-8736<br>Active 03/24/2003 Notify<br><br>**Private Counsel 329090**<br>S Elaine McChesney<br>Bingham McCutchen LLP<br>150 Federal Street<br>Boston, MA 02110<br>Phone: 617-951-8000<br>Fax: 617-951-8736<br>Active 03/24/2003 Notify |
| **Plaintiff**<br>Robertson Stephens Inc<br>Active 03/24/2003 | **Private Counsel 276360**<br>Joseph L Kociubes<br>Bingham McCutchen LLP<br>150 Federal Street<br>Boston, MA 02110<br>Phone: 617-951-8000<br>Fax: 617-951-8736<br>Active 03/24/2003 Notify<br><br>**Private Counsel 329090**<br>S Elaine McChesney<br>Bingham McCutchen LLP<br>150 Federal Street<br>Boston, MA 02110<br>Phone: 617-951-8000<br>Fax: 617-951-8736<br>Active 03/24/2003 Notify |
| **Defendant**<br>Eric E Alt<br>Service pending 03/24/2003 | **Private Counsel 550522**<br>Kevin T Peters<br>Todd & Weld<br>28 State Street<br>31st floor<br>Boston, MA 02109<br>Phone: 617-720-2626<br>Fax: 617-227-5777<br>Active 04/02/2003 Notify |

MAS-20020121
guen

**Commonwealth of Massachusetts**
SUFFOLK SUPERIOR COURT
Case Summary
Civil Docket

04/02/2003
05:00 PM

**SUCV2003-01378**
**FleetBoston Financial Corporation et al v Alt et al**

| | |
|---|---|
| **Defendant**<br>Michael Barr<br>Service pending 03/24/2003 | *** See Attorney Information Above *** |
| **Defendant**<br>J J Beaghan<br>Service pending 03/24/2003 | *** See Attorney Information Above *** |
| **Defendant**<br>Brian S Bean<br>Service pending 03/24/2003 | *** See Attorney Information Above *** |
| **Defendant**<br>Charles Bolton<br>Service pending 03/24/2003 | *** See Attorney Information Above *** |
| **Defendant**<br>Vincent Bowen III<br>Service pending 03/24/2003 | *** See Attorney Information Above *** |
| **Defendant**<br>Richard A Brand<br>Service pending 03/24/2003 | *** See Attorney Information Above *** |

MAS-20020121
guen

**Commonwealth of Massachusetts**
SUFFOLK SUPERIOR COURT
Case Summary
Civil Docket

04/02/2003
05:00 PM

## SUCV2003-01378
## FleetBoston Financial Corporation et al v Alt et al

| | |
|---|---|
| **Defendant**<br>Clark Callander<br>Service pending 03/24/2003 | *** See Attorney Information Above *** |
| **Defendant**<br>Georgene Carambat<br>Service pending 03/24/2003 | *** See Attorney Information Above *** |
| **Defendant**<br>Michael Casey<br>Service pending 03/24/2003 | *** See Attorney Information Above *** |
| **Defendant**<br>Jeffrey W Colin<br>Service pending 03/24/2003 | *** See Attorney Information Above *** |
| **Defendant**<br>Alex Dean<br>Service pending 03/24/2003 | *** See Attorney Information Above *** |
| **Defendant**<br>Christopher Dodge<br>Service pending 03/24/2003 | *** See Attorney Information Above *** |

MAS-20020121
guen

**Commonwealth of Massachusetts**
SUFFOLK SUPERIOR COURT
Case Summary
Civil Docket

04/02/2003
05:00 PM

## SUCV2003-01378
## FleetBoston Financial Corporation et al v Alt et al

| | |
|---|---|
| **Defendant**<br>David Fullerton<br>Service pending 03/24/2003 | *** See Attorney Information Above *** |
| **Defendant**<br>Philip Gardner<br>Service pending 03/24/2003 | *** See Attorney Information Above *** |
| **Defendant**<br>Jonathan Goldman<br>Service pending 03/24/2003 | *** See Attorney Information Above *** |
| **Defendant**<br>Christopher W Greer<br>Service pending 03/24/2003 | *** See Attorney Information Above *** |
| **Defendant**<br>Tony Haertl<br>Service pending 03/24/2003 | *** See Attorney Information Above *** |
| **Defendant**<br>Gregory C Holmes<br>Service pending 03/24/2003 | *** See Attorney Information Above *** |

**Commonwealth of Massachusetts**
SUFFOLK SUPERIOR COURT
Case Summary
Civil Docket

## SUCV2003-01378
## FleetBoston Financial Corporation et al v Alt et al

| | |
|---|---|
| **Defendant**<br>Frederick M Hughes<br>Service pending 03/24/2003 | *** See Attorney Information Above *** |
| **Defendant**<br>Daniel Hurwitz<br>Service pending 03/24/2003 | *** See Attorney Information Above *** |
| **Defendant**<br>Andrew Kaye<br>Service pending 03/24/2003 | *** See Attorney Information Above *** |
| **Defendant**<br>Maureen McCarthy<br>Service pending 03/24/2003 | *** See Attorney Information Above *** |
| **Defendant**<br>Kevin McGinty<br>Service pending 03/24/2003 | *** See Attorney Information Above *** |
| **Defendant**<br>Todd H McWilliams<br>Service pending 03/24/2003 | *** See Attorney Information Above *** |

MAS-20020121
guen

**Commonwealth of Massachusetts**
SUFFOLK SUPERIOR COURT
Case Summary
Civil Docket

04/02/2003
05:00 PM

## SUCV2003-01378
## FleetBoston Financial Corporation et al v Alt et al

**Defendant**
Samuel A Morse
Service pending 03/24/2003

*** See Attorney Information Above ***

**Defendant**
Agnes Murphy
Service pending 03/24/2003

*** See Attorney Information Above ***

**Defendant**
Diane P Murphy
Service pending 03/24/2003

*** See Attorney Information Above ***

**Defendant**
David O'Brian
Service pending 03/24/2003

*** See Attorney Information Above ***

**Defendant**
Joseph Piazza
Service pending 03/24/2003

*** See Attorney Information Above ***

**Defendant**
Michael P Perrella
Service pending 03/24/2003

*** See Attorney Information Above ***

**Commonwealth of Massachusetts**
SUFFOLK SUPERIOR COURT
Case Summary
Civil Docket

## SUCV2003-01378
## FleetBoston Financial Corporation et al v Alt et al

| | |
|---|---|
| **Defendant**<br>Larry Rehmer<br>Service pending 03/24/2003 | *** See Attorney Information Above *** |
| **Defendant**<br>David Reilly<br>Service pending 03/24/2003 | *** See Attorney Information Above *** |
| **Defendant**<br>John T Rossi<br>Service pending 03/24/2003 | *** See Attorney Information Above *** |
| **Defendant**<br>Mark J Salter<br>Service pending 03/24/2003 | *** See Attorney Information Above *** |
| **Defendant**<br>Scott Scharfman<br>Service pending 03/24/2003 | *** See Attorney Information Above *** |
| **Defendant**<br>Allen Smith<br>Service pending 03/24/2003 | *** See Attorney Information Above *** |

MAS-20020121
guen

Case 1:03-cv-10597-EFH    Document 2    Filed 04/03/03    Page 17 of 59
**Commonwealth of Massachusetts**
SUFFOLK SUPERIOR COURT
Case Summary
Civil Docket

04/02/2003
05:00 PM

## SUCV2003-01378
## FleetBoston Financial Corporation et al v Alt et al

| | |
|---|---|
| **Defendant**<br>Scott Sullivan<br>Service pending 03/24/2003 | *** See Attorney Information Above *** |
| **Defendant**<br>Steven Tishman<br>Service pending 03/24/2003 | *** See Attorney Information Above *** |
| **Defendant**<br>Ted E Tobiason<br>Service pending 03/24/2003 | *** See Attorney Information Above *** |
| **Defendant**<br>Daniel P White III<br>Service pending 03/24/2003 | *** See Attorney Information Above *** |
| **Defendant**<br>Jeff Winaker<br>Service pending 03/24/2003 | *** See Attorney Information Above *** |
| **Defendant**<br>New York Stock Exchange Inc<br>Service pending 03/24/2003 | |

**ENTRIES**

MAS-20020121
guen

**Commonwealth of Massachusetts**
SUFFOLK SUPERIOR COURT
Case Summary
Civil Docket

04/03/2003
10:07 AM

## SUCV2003-01378
## FleetBoston Financial Corporation et al v Alt et al

| Date | Paper | Text |
|------|-------|------|
| 03/24/2003 | 1.0 | Complaint (Business) filed |
| 03/24/2003 | | Origin 1, Type BE1, Track B. |
| 03/24/2003 | 2.0 | Civil action cover sheet filed |
| 03/24/2003 | 3.0 | Plaintiff FleetBoston Financial Corporation's MOTION for appointment of special process server Beacon Hill Research &Service Group Inc allowed (vanGestel,J) |
| 03/24/2003 | 4.0 | Plaintiff FleetBoston Financial Corporation's MOTION to stay arbitrator  or in the alternative for prelim injunc |
| 03/24/2003 | 5.0 | MOTION for Short Order of Notice |
| 03/25/2003 | | Summons and order of notice issued; returnable  Wed Apr 2, 2003 inCtrm #20 @2pm re:prelim injunc (vanGestel, J) Summons & Order of notice isued (See P#5) |
| 03/26/2003 | 6.0 | Notice of Acceptance into Business Litigation Session (vanGestel,J) (3/25/03) notice sent 3/25/03 |
| 03/26/2003 | 7.0 | Affidavit of Lisa G. Bisaccia (Dated 3/25/03) |
| 04/01/2003 | | Certified copy of petition for removal to U. S. Dist. Court of Defts. Eric. Alt, Michael Barr, J.J. Beaghan, Brian S. Ben, Charles Bolton, Vincent Bowen III, Richard A. Brand, Clark Callander, Georgene Carambat, Michael Casey, Jeffrey W. Colin, Alex Dean, Christopher Dodge, David Fullerton, Philip Gardner, Jonathan Goldman, Christopher W. Greer, Tony Haertl, Gregory C. Holmes, Frederick M. Hughes, Daniel Hurwitz, Andrew Kaye, Maureen McCarthy, Kevin McGinty, Todd  H. McWilliams, Samuel A. Morse, Agnes Murphy, Diane P. Murphy, David O'Brian, Joseph Piazza, Michael P. Perrella, Larry Rehmer, David Reilly, John T. Rossi, Mark J. Salter, Scott  Scharfman, Allen Smith, Scott Sullivan, Steven Tishman, Ted E. Tobiason, Daniel P. White III, Jeff Winaker U. S. Dist.#(03-10597EFH). |
| 04/02/2003 | | Case REMOVED this date to US District Court of Massachusetts |

### EVENTS

| Date | Session | Event | Result |
|------|---------|-------|--------|
| 04/02/2003 | CtRm 20 | Motion/Hearing: prel inj | Event not held-joint request |

. HEREBY ATTEST AND CERTIFY ON

_APRIL  3,  2003_, THAT THE

FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:

ASSISTANT CLERK.

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.

SUPERIOR COURT
DEPARTMENT OF THE
TRIAL COURT
BUSINESS SECTION

03-1378 BLS

---

FLEETBOSTON FINANCIAL CORPORATION,
FLEET SECURITIES, INC.,
ROBERTSON STEPHENS GROUP, INC., and
ROBERSTON STEPHENS, INC.,

                          Plaintiffs,

                  v.

ERIC E. ALT, MICHAEL BARR, J.J. BEAGHAN,
BRIAN S. BEAN, CHARLES BOLTON, VINCENT
BOWEN III, RICHARD A. BRAND, CLARK
CALLANDER, GEORGENE CARAMBAT,
MICHAEL CASEY, JEFFREY W. COLIN,
ALEX DEAN, CHRISTOPHER DODGE, DAVID
FULLERTON, PHILIP GARDNER, JONATHAN
GOLDMAN, CHRISTOPHER W. GREER, TONY
HAERTL, GREGORY C. HOLMES, FREDERICK
M. HUGHES, DANIEL HURWITZ, ANDREW
KAYE, MAUREEN McCARTHY, KEVIN
McGINTY, TODD H. McWILLIAMS, SAMUEL A.
MORSE, AGNES MURPHY, DIANE P. MURPHY,
DAVID O'BRIAN, JOSEPH PIAZZA, MICHAEL
P. PERRELLA, LARRY REHMER, DAVID
REILLY, JOHN T. ROSSI, MARK J. SALTER,
SCOTT SCHARFMAN, ALLEN SMITH, SCOTT
SULLIVAN, STEVEN TISHMAN, TED E.
TOBIASON, DANIEL P. WHITE III, JEFF
WINAKER, and THE NEW YORK STOCK
EXCHANGE, INC., IN ITS CAPACITY AS
AN ARBITRATION FORUM.

                          Defendants.

CIVIL ACTION
NO.

---

**COMPLAINT**

LITDOCS:490651.2

-2-

## I.    INTRODUCTION

Plaintiffs FleetBoston Financial Corporation (hereinafter "FBF"), Fleet Securities, Inc. (hereinafter "Fleet Securities"), Robertson Stephens Group, Inc. (hereinafter "RSGI"), and Robertson Stephens, Inc. (hereinafter "RSI") bring this action for a stay of arbitration proceedings, declaratory judgment and preliminary injunction against the defendants, all of whom are former employees of the investment bank RSI which was at all relevant times wholly owned by RSGI, a subsidiary of FBF.  The defendants have collectively filed an arbitration claim with the New York Stock Exchange (the "NYSE Claim") against FBF, Fleet Securities, RSGI, and RSI stemming from their employment with RSI.

Of the four entities named as respondents in the NYSE claim, only RSI, the defendants' former employer, is a signatory to any agreement with defendants to arbitrate before the NYSE.[1]  Despite the fact that defendants' sole employer was RSI, the NYSE Claim asserts breach of contract theories and alleges tortious conduct on the part of FBF acting as the parent corporation of RSGI, including allegations of fraud, misrepresentation and breach of fiduciary duty by FBF in allegedly depriving the defendants of compensation they claim is owed to them by FBF.

Accordingly, FBF and RSGI seek an immediate stay of the arbitration before the NYSE,[2] pursuant to M.G.L. c. 251, § 2(b) (or, alternatively, a preliminary injunction), on

---

[1]While Fleet Securities is also a member of the NYSE, Fleet Securities was never defendants' employer, has never had any type of contractual agreement with defendants, has never exercised any control over any of the Robertson Stephens companies, and, in fact, has no relationship whatsoever with the defendants.  Affidavit of Charles E. Sax, ¶¶ 4-6.

[2]Plaintiff RSI agrees that it is required to arbitrate with defendants before the NYSE all disputes arising from defendants' employment and termination of employment with RSI.  *See* NYSE Rule 347.  However, many of defendants' claims are in the nature of shareholder derivative claims, which are not arbitrable under NYSE Rule 600(e).  To the extent defendants' NYSE claims against RSI are shareholder derivative claims, rather than employment claims, RSI joins in the request for a stay as to those claims.  Fleet

LITDOCS:490651.2

-3-

the grounds that (i) they are not members of the NYSE, (ii) they are not parties to any agreement to arbitrate claims before the NYSE, (iii) the NYSE has no jurisdiction over Fleet or RSGI, and (iv) the defendants' tort claims are, in essence, shareholder derivative claims that are not arbitrable. Fleet Securities seeks a stay of the arbitration because the disputes raised by defendants are not eligible for submission before the NYSE. All plaintiffs seek a stay of the claims brought in defendants' capacity as shareholders rather than as employees of RSI because those claims can only be maintained as shareholder derivative claims that are not arbitrable before the NYSE. Additionally, all of the plaintiffs seek an Order from the Court declaring, among other things, that the plaintiffs have not engaged in the underlying conduct alleged by the defendants in the NYSE Claim.

## II.    BACKGROUND

### A.    THE PARTIES

1.    Plaintiff FleetBoston Financial Corporation ("FBF"), a Rhode Island corporation with a principal place of business in Boston, Massachusetts, is a financial holding company principally engaged in personal financial services and commercial financial services.

2.    Plaintiff Fleet Securities, Inc., is a New York corporation and a wholly owned subsidiary of Quick & Reilly/Fleet Securities, Inc. ("Q&R/FSI"), with a principal place of business in New York, New York. Q&R/FSI is a Delaware corporation that is a holding company for a variety of securities firms. Q&R/FSI is a direct subsidiary of FBF. Fleet Securities is not and has never been part of the Robertson Stephens group of companies. *See* Affidavit of Charles E. Sax ¶¶ 4-6.

---

Securities has filed with the NYSE a motion to dismiss based on defendants' failure to allege any act at all by Fleet Securities. To the extent defendants purport to assert against Fleet Securities shareholder derivative claims or claims for breach of fiduciary duty or the like, Fleet Securities also joins in the request for a stay as to those claims.

-4-

3.     Plaintiff Robertson Stephens Group, Inc., ("RSGI") a Delaware corporation and a subsidiary of FBF, is a holding company for Roberston Stephens, Inc. RSGI itself has no employees.

4.     Plaintiff Robertson Stephens, Inc. ("RSI"), a Massachusetts corporation no longer conducting business, was an investment bank and securities firm with offices in Massachusetts, California, New York, Georgia, Illinois and abroad.

5.     Upon information and belief, defendant Eric Alt, a former employee of RSI, is a California resident who currently lives at 1483 Sutter Street, San Francisco, California.

6.     Upon information and belief, defendant Michael Barr, a former employee of RSI, is a New York resident who currently lives in Water Mill, New York.

7.     Upon information and belief, defendant J. J. Beaghan, a former employee of RSI, is a California resident who currently lives at 3053 Filmore, San Francisco, California.

8.     Upon information and belief, defendant Brian S. Bean, a former employee of RSI, is a California resident who currently lives at 3527 Washington Street, San Francisco, California.

9.     Upon information and belief, defendant Charles Bolton, a former employee of RSI, is a California resident who currently lives at 499 Marina Boulevard., San Francisco, California.

10.     Upon information and belief, defendant Vincent Bowen, III, a former employee of RSI, is a New York resident who currently lives at 599 Eastern Parkway, Brooklyn, New York.

11.     Upon information and belief, defendant Richard A. Brand, a former employee of RSI, is a Connecticut resident who currently lives at 40 Rock Point Road, Old Greenwich, Connecticut.

-5-

12.    Upon information and belief, defendant Clark Callander, a former employee of RSI, is a California resident who currently lives at 2815 Scott Street, San Francisco, California.

13.    Upon information and belief, defendant Georgene Carambat, a former employee of RSI, is a California resident who currently lives at 440 Hazel Avenue, Milbrae, California.

14.    Upon information and belief, defendant Michael Casey, a former employee of RSI, is a California resident who currently lives at 565 Jersey Street, San Francisco, California.

15.    Upon information and belief, defendant Jeffery W. Colin, a former employee of RSI, is a California resident who currently lives at 18 Cullodden Park Road, San Rafael, California.

16.    Upon information and belief, defendant Alex Dean, a former employee of RSI, is a New York resident who currently lives at 48 West 76th Street, New York, New York.

17.    Upon information and belief, defendant Christopher Dodge, a former employee of RSI, is a California resident who currently lives at 3008 Clay Street, San Francisco, California.

18.    Upon information and belief, defendant David Fullerton, a former employee of RSI, is a California resident who currently lives at 333 Ramona Avenue, Piedmont, California.

19.    Upon information and belief, defendant Philip Gardner, a former employee of RSI, is a California resident who currently lives at 159 Great Circle Drive, Mill Valley, California.

20.    Upon information and belief, defendant Jonathan Goldman, a former employee of RSI, is a Georgia resident who currently lives at 2645 Howell Mill Road NW, Atlanta, Georgia.

LITDOCS:490651.2

-6-

21.    Upon information and belief, defendant Christopher W. Greer, a former employee of RSI, is a California resident who currently lives at 765 Market Street, San Francisco, California.

22.    Upon information and belief, defendant Tony Haertl, a former employee of RSI, is a California resident who currently lives at 2377 Hagen Oaks Drive, Alamo, California.

23.    Upon information and belief, defendant Gregory C. Holmes, a former employee of RSI, is a California resident who currently lives at 212 Dore Street, San Francisco, California.

24.    Upon information and belief, defendant Frederick M. Hughes, a former employee of RSI, is a California resident who currently lives at Webster Street, San Francisco, California.

25.    Upon information and belief, defendant Daniel Hurwitz, a former employee of RSI, is a California resident who currently lives at 17 Normandy Lane, Orinda, California.

26.    Upon information and belief, defendant Andrew Kaye, a former employee of Robertson Stephens International, Ltd. ("RSIL"),[2] is a citizen of Israel, who currently lives in Tel Aviv, Israel.

27.    Upon information and belief, defendant Maureen McCarthy, a former employee of RSI, is a California resident who currently lives at 10 Sacramento Patio, Stinson Beach California.

---

[2] RSIL is a wholly owned subsidiary of Robertson Stephens International Holdings, Inc., which is a wholly owned subsidiary of RSGI. All United States employees of the Robertson Stephens group of companies were employed by RSI. International employees were employed by RSIL. Mr. Kaye is the only defendant employed by RSIL. For convenience only, in the case of Mr. Kaye, references to RSI will be deemed references to RSIL.

LITDOCS:490651.2

-7-

28.    Upon information and belief, defendant Kevin McGinty, a former employee of RSI, is a Massachusetts resident who currently lives at 17 Gloucester Street, # 6, Boston, Massachusetts.

29.    Upon information and belief, defendant Todd McWilliams, a former employee of RSI, is a California resident who currently lives at 408 La Casa Via, Walnut Creek, California.

30.    Upon information and belief, defendant Samuel A. Morse, a former employee of RSI, is a Massachusetts resident who currently lives at 78 Forest Avenue, Cohasset, Massachusetts.

31.    Upon information and belief, defendant Agnes Murphy, a former employee of RSI, is a California resident who currently lives at 3150 Monticello Road, Napa, California.

32.    Upon information and belief, defendant Diane P. Murphy, a former employee of RSI, is a California resident who currently lives at 1199 Camino Vallencito, Lafayette, California.

33.    Upon information and belief, defendant David O'Brian, a former employee of RSI, is a Massachusetts resident who currently lives at 35 Ocean Avenue, Swampscott, Massachusetts.

34.    Upon information and belief, defendant Michael P. Perrella, a former employee of RSI, is a California resident who currently lives at 366 West Baltimore Avenue, Larkspur, California.

35.    Upon information and belief, defendant Joseph Piazza, a former employee of RSI, is a California resident who currently lives at 240 Madrona Avenue, Belvedere, California.

36.    Upon information and belief, defendant Larry Rehmer, a former employee of RSI, is a California resident who currently lives at 3995 Arbolado Drive, Walnut Creek, California.

LITDOCS:490651.2

-8-

37.  Upon information and belief, defendant David Reilly, a former employee of RSI, is a California resident who currently lives at 10366 Holman Avenue, Los Angeles, California.

38.  Upon information and belief, defendant John T. Rossi, a former employee of RSI, is a California resident who currently lives at 270 Eleanor Drive, Woodside, California.

39.  Upon information and belief, defendant Mark J. Salter, a former employee of RSI, is a California resident who currently lives at 1904 Baker Street, San Francisco, California.

40.  Upon information and belief, defendant Scott Scharfman, a former employee of RSI, is a California resident who currently lives at 28 Windward Road, Tiburon, California.

41.  Upon information and belief, defendant Allen Smith, a former employee of RSI, is a Illinois resident who currently lives at 736 Taft Road, Hinsdale, Illinois.

42.  Upon information and belief, defendant Scott Sullivan, a former employee of RSI, is a Massachusetts resident who currently lives at 43 Lincoln House Point, Swampscott, Massachusetts.

43.  Upon information and belief, defendant Steven Tishman, a former employee of RSI, is a New York resident who currently lives at 1160 Park Avenue, New York, New York.

44.  Upon information and belief, defendant Ted E. Tobiason, a former employee of RSI, is a California resident who currently lives at 473 Buena Vista East, San Francisco, California.

45.  Upon information and belief, defendant Daniel P. White, III, a former employee of RSI, is a California resident who currently lives at 718 Rowland Boulevard, Novato, California.

LITDOCS:490651.2

-9-

46.     Upon information and belief, defendant Jeff Winaker, a former employee of RSI, is a California resident who currently lives at 2 Meadowbrook Lane, Danville, California.

47.     The defendant New York Stock Exchange, Inc. ("NYSE") is a not-for-profit corporation with a principal place of business at 11 Wall Street, New York, New York. The NYSE is a national securities exchange, registered with the Securities and Exchange Commission. The NYSE provides neutral arbitration panels to hear and decide disputes arising under its rules at locations throughout the United States, including Boston, MA. The NYSE is being named solely in its capacity as the forum in which the defendants have improperly commenced arbitration.

**B.     JURISDICTION AND VENUE**

48.     This Court has jurisdiction over defendants NYSE, McGinty, Morse, O'Brian and Sullivan pursuant to M.G.L. c. 223A, § 2 and jurisdiction over the other individual defendants pursuant to M.G.L. c. 223A, § 3 because each of the defendants was employed by a Massachusetts company and engaged in commercial transactions with a Massachusetts company in the context of that employment relationship, including but not limited to, systematic negotiations and communications with respect to the compensation agreements, including the exercise of stock options in Massachusetts, upon which their NYSE Claim and this declaratory judgment action is based. This Court has subject matter jurisdiction over this matter pursuant to M.G.L. c. 231A, and M.G.L. c. 251, § 2(b).

49.     Venue is proper in this Court pursuant to M.G.L. c. 251, § 17.

**III.   FACTUAL ALLEGATIONS COMMON TO EACH COUNT**

50.     RSI, which began as a California partnership in 1969 under the entity name Robertson, Coleman, Siebel, and Weisel, operated as a broker-dealer investment firm until July 2002, pursuant to Section 15 of the Securities Exchange Act, 15 U.S.C.

-10-

§ 78, providing a range of financial services, including securities underwriting, sales and trading, and investment banking.

51.    Upon information and belief, in 1997, RSI was acquired by the Bank of America for $540 million.

52.    In 1998, the former BankBoston Corporation ("BKB") acquired RSI from Bank of America for $400 million in cash and another $400 million in deferred compensation payments to certain key RSI executives.

53.    At the time, RSI employed approximately 160 Managing Directors and Principals, some of whom are the instant defendants.  On May 28, 1998, these 160 individual employees entered into Employment Agreements with RSI's predecessor[4] and with BKB ("the Acquisition Agreements").  The Acquisition Agreements contained express provisions for compensation based on a salary and bonus format and a salary plus commissions format for certain sales and trading employees.

54.    At that same time, RSI's predecessor and BKB entered a separate agreement whereby BKB agreed that RSI's compensation pool would be funded by 55% of RSI's net revenues ("the Compensation Pool Agreement").

55.    On or about October 1999, the former Fleet Financial Group, Inc. merged with BKB to form FleetBoston Financial Corporation, or FBF.  As a result of the merger, FBF acquired RSI and succeeded to the BKB contracts.

56.    In 1999 and 2000, there was unprecedented growth in the new issue market and in the demand for shares of stock in technology companies transitioning from privately held status to publicly traded status, known as initial public offerings or IPO's. During this time frame, RSI became one of the top underwriters of high technology

---

[4] The signatory to the Acquisition Agreements was BancBoston Securities, Inc., which changed its name to BancBoston Robertson Stephens on August 31, 1998.  That entity changed its name to FleetBoston Robertson Stephens, Inc. on December 13, 1999. That entity then became Robertson Stephens, Inc. (or RSI) on September 13, 2000.

-11-

company public offerings. RSI raised a total of approximately $5.4 billion in 1999 and 2000 through 81 initial public offerings.

57. Among the companies RSI brought public were the following Massachusetts based companies: C-Bridge Internet Solutions, Switchboard, Inc., Firepond, and MCK Communications.

58. At the height of RSI's economic productivity and prosperity in 1999, RSI and RSIL employed over 1,500 employees worldwide with offices in Boston, San Francisco, New York, Menlo Park, Chicago, Atlanta, London, Munich, and Tel Aviv. However, as discussed more fully below, by 2001, RSI's revenues dropped by seventy percent and it incurred a net operating loss of approximately $92 million.

A. THE COMPENSATION POOL AGREEMENT IN EFFECT FROM 1998 THROUGH 2001

59. All of the defendants were bound by the Compensation Pool Agreement, as described below, which governed the amount of their compensation for 2001.

60. The RSI "partners" were typically compensated with a fixed salary and a bonus to be paid out at the end of the year when the firm's productivity could be assessed. The bonus was calculated on a number of factors, the most important being the amount of profit generated by the firm during the course of the year. Other obvious factors included the individual's performance during the year. This was and still is standard industry practice for investment banks across the country.

61. Pursuant to an agreement entered into as part of the 1998 BKB acquisition of RSI, BKB and RSI agreed that 55% of RSI's annual net revenues would be set aside for distribution as compensation to RSI employees for each year through 2001.

62. Under the Compensation Pool Agreement, the 55% of annual net revenue pool was set aside for **all** compensation for RSI employees, including without limitation staff salaries, benefits such as insurance, tuition assistance payments, executives' salaries, and bonus payments. In particular, deferred compensation payments in the form of

-12-

equity grants, such as FBF stock options, were also to be deducted from the 55% pool in the year in which they were granted.

63.    Certain of the defendants were hired by RSI after 1998, and subject to individual employment contracts with RSI containing explicit provisions as to their compensation, including amounts of guaranteed bonus.  These employees include Barr, Casey, Colin, Dean, Goldman, Hurwitz, Kaye, Morse, O'Brian, Scharfman, Tishman, and Tobiason.  Each of these defendants was guaranteed a 2001 bonus in a specific amount. All such guaranteed bonuses were paid from the 2001 Compensation Pool.

64.    Most of the defendants are subject to an individual Acquisition Agreement with RSI, which expressly provides that each defendant, based on the specified number of "partner points" awarded to that defendant, would receive his or her proportionate share of what remained in the 2001 Compensation Pool after payment of compensation to all employees other than to "partners."[5]

65.    The Compensation Pool Agreement was appended to, included, incorporated, and memorialized in each of the Acquisition Agreements between RSI and defendants and applied to the employment agreements of all RSI employees.  Thus, each RSI executive, including each of the defendants, was aware of the salary structure and compensation scheme in place up through 2001.

66.    In 1999, upon the merger of BKB and Fleet Financial Group, Inc., the rights and responsibilities of the Compensation Pool Agreement were assumed by FBF. That agreement expired by its terms at the end of 2001.  A new compensation plan for RSI was being negotiated for the 2002 compensation year which was not based on a 55% net revenue figure, which did not involve the award of "partner points," and which was entirely discretionary.

_____

[5]RSI designated certain executives as "partners" for purpose of assigning "partner points" as part of the compensation exercise.  The term was a throwback to the time when Robertson Stephens was a partnership.

-13-

67.    Thus, the contractual obligations for compensation by RSI to defendants are squarely set forth in the Compensation Pool Agreement, the Acquisition Agreements and/or individual letters of employment.

**B.    RSI's COMPENSATION DISTRIBUTION SYSTEM**

68.    Pursuant to the terms of the Compensation Pool Agreement, the total of all compensation of all types distributed or guaranteed to all of the RSI employees during a given year was fixed at 55% of the RSI's net revenues for that year, whether the compensation was salary or bonus, cash or equity, benefits or otherwise.

69.    In other words, the total compensation the employees of RSI at any level were to receive depended entirely on the net revenues achieved by RSI in that given year.

70.    This system had its obvious benefits to the RSI employees, including the defendants.  During a year in which substantial revenues were generated, the total compensation pool would be greater, enabling employees at all levels to earn a larger bonus.  It also had its potential drawbacks when the converse occurred.

71.    Under the terms of the Compensation Pool Agreement and as a matter of practice, determinations as to an individual RSI employee's annual compensation were made at the discretion of RSI management, including many of the defendants, which made recommendations to the Compensation Committee.

72.    FBF did not establish, influence, or determine annual compensation rates for individual RSI employees.  The compensation recommendations made by RSI management were reviewed by the Compensation Committee in aggregate terms, i.e., whether the totals met the 55% formula. The Compensation Committee reviewed and formally approved the recommendation of partnership points at the beginning of each year.

73.    The decision as to what to pay each of the defendants was primarily the responsibility of RSI's management.  RSI management made recommendations not only

-14-

as to the amount of the individual's bonus but also the various components of the bonus, e.g., cash, equity, deferred cash, etc. RSI management recommended how to allocate the funds available under the Compensation Pool Agreement, subject to formal review and approval by the Compensation Committee.

74.    Certain of the defendants were also included in the Robertson Stephens Deferred Retention Plan, dated 1999. Pursuant to the terms of the Plan, named employees were eligible for cash compensation payable in the future as an incentive to remain with RSI. As set forth in the 1999 Robertson Stephens Deferred Retention Plan, the Compensation Pool consisted of "some portion of yearly *profits* of the Company and which is allocated on an annual basis to Participants at the *discretion* of the Executive Management Committee based upon the recommendation of the Executive Committee." § 1.3 (emphasis added).

75.    Each of the defendants received substantial cash and deferred cash compensation during his or her employment with RSI. According to defendants' own admissions at pp. 17-18 of their NYSE Claim, in 2000, 38 of the defendants split $114 million among just themselves, for an average 2000 bonus of $2.9 million each. Eleven of this group received in excess of $4 million each. In 2001, even though RSI had a net operating loss of $92 million, defendants still received bonuses that averaged nearly $1 million each.

### C.    RSI'S BREACH OF THE COMPENSATION POOL AGREEMENT

76.    Notwithstanding the vast amounts of income the RSI executives were earning as a result of the technology boom in 1999 and 2000, the RSI executives were not satisfied with the 55% net revenue formula as provided by the Compensation Pool Agreement.

77.    The amount of bonuses distributed by RSI for year-end 2000 exceeded the 55% cap by $70 million.

-15-

78.    By exceeding the 55% net revenue figure by $70 million, RSI breached its agreement with FBF, to the benefit of the defendants, whose bonuses were improperly inflated by the excess payment.

### D.    RSI HAD DEPLETED THE COMPENSATION POOL AND THERE WAS NOTHING LEFT TO DISTRIBUTE FOR BONUSES AT YEAR-END 2001

79.    As has been well documented in the news media, throughout 2000 and 2001, difficult market conditions prevailed, including an industry-wide decline in technology sector investment banking activity, as well as lower volumes in overall investment banking transactions and other industries in which RSI engaged.

80.    While 2000 had been a banner year, everyone at RSI knew that 2001 would be one of the worst years on record. Revenues for 2001 were down approximately 70% and RSI had a $92 million net operating loss. RSI's heyday had ended, though the RSI executives and the defendants were unwilling to accept this fact.

81.    Evidently unable or unwilling to realize that the boom years for the high tech IPO market which had sustained RSI in the previous years were over, RSI management did not significantly reduce its operating costs or its executive compensation expenses.

82.    Because RSI management (including some of the defendants) had made imprudent, irresponsible hiring decisions in 1999 and 2000, entering into many contracts with guaranteed minimum bonuses payable in 2001, it became apparent that there would be little or nothing left in the Compensation Pool at the end of the year once all contractual obligations had been paid. That is, there would be nothing left to divide among the partners or to pay to non-partners in the form of discretionary bonuses.

83.    Awards for the named defendants alone amounted to nearly $40 million for 2001. All defendants with 2001 guarantees were paid in full, even as RSI sustained a $92 million loss.

LITDOCS:490651.2

-16-

84. In late 2001, RSI management requested that FBF, as the corporate parent, approve a supplement to the RSI Compensation Pool so that discretionary bonuses and partner bonuses could be paid.

85. Despite the fact that RSI was hemorrhaging money during 2001, FBF remained focused on maintaining RSI as a viable entity, as it had invested vast sums to acquire it and to keep it running.

86. As a result of extended negotiations about the 2001 Compensation Pool, FBF agreed to subsidize an additional $79 million, to be repaid to FBF in the future when RSI's revenues improved. FBF was under no obligation whatsoever to make such a subsidy or to otherwise provide any assistance to RSI. At all times, FBF complied with its obligations under the Compensation Pool Agreement and allowed RSI to maintain 55% of revenues for its Compensation Pool.

87. The $79 million subsidized by FBF was comprised of $13 million in cash, $45 million in deferred money market funds, $15 million in FBF stock options, and $5 million in Robertson Stephens restricted stock units. FBF placed one condition on this subsidy: the RSI Executive Committee members (with the exception of one member who was new to the Committee) could not receive a bonus because it was their poor management that had led to this situation.

88. RSI's management decided how to allocate this amount among the various RSI employees and in what components each employee's bonus would be divided. In addition, in order to provide employees with access to more cash, FBF agreed that RSI could accelerate the release of prior years' deferred compensation that was held in money market funds. For example, an individual who had received an award of money market funds in 1999 would be due a payment of one-third of that amount in 2001; likewise an award of deferred money market funds for year 2000 would entail a one-third payment due in 2001 and another in 2002. FBF agreed that RSI could accelerate payment of those funds, except to the Executive Committee.

LITDOCS:490651.2

-17-

89.    Because RSI had no 2001 profits and no funds in the Compensation Pool with which to pay the bonuses, many bonuses included deferred compensation and awards of equity.

90.    Pursuant to the terms of the Compensation Pool Agreement, RSI had absolutely no funds to distribute as partner bonuses for 2001. Those employees with individual employment agreements with guaranteed bonuses were in fact awarded their guaranteed bonus for 2001. According to the terms of their employment contracts, none of the other defendants was entitled to any bonus whatsoever.

91.    At no time did FBF represent to any of the RSI employees, including the defendants, that they would receive "market compensation" for 2001. Indeed, FBF went to great lengths to ensure that RSI's management made it clear to the RSI employees that they would not receive such cash bonuses as they had received during the boom years. RSI, like many other investment banks, suffered tremendously from the market conditions that took hold in 2001. RSI suffered even more so because it was so heavily reliant on the high technology IPO market.

92.    At all times the defendants had employment agreements that governed the terms of their compensation. Those written agreements control, and there has been no breach of those agreements.

E.    THE RESTRICTED UNIT PLAN

93.    Effective July 1, 2001, RSGI instituted the Robertson Stephens Restricted Unit Plan whereby RSI employees could earn awards of an equity interest in RSGI. The Plan was contained in a written plan document and each individual's award was evidenced by a written award agreement.

94.    Pursuant to the terms of the Plan and the award agreement, each restricted unit would vest over a period of years. Only at the end of seven years after the grant or upon termination of employment under certain conditions could the vested units be exchangeable for shares of common stock of RSGI.

-18-

95.    By the express terms of the Plan and the award agreement, no holder of a restricted unit was considered a shareholder until such time as vesting had occurred and all other conditions in the Plan satisfied.

96.    The first awards and grants of units were effective July 1, 2001. Therefore, the earliest possible date for vesting of any shares was July 1, 2002.

97.    Consequently, none of the defendants was a shareholder of RSGI at the time of the acts of which they complain.

98.    The restricted units had been valued at grant at $7/share, based on the value of RSGI as a going concern.  By July 2002, RSI was the subject of regulatory investigations and had been named as a defendant in several class action lawsuits, all involving alleged improprieties by RSI management, including some of the defendants. The contingent liability facing RSI was significant.  In addition, the company continued to bleed money on an on-going basis.  By July 2002, the value of the restricted units was not positive, based on assets and contingent liability.

**F.    THE DEMISE OF RSI**

99.    After considering all options to maintain whatever value RSI may have still retained, FBF announced on or about April 16, 2002, that it would seek to sell RSI to the highest bidder.

100.    By June 2002, because of the position RSI was in as a result of the bursting technology bubble, as well as the contingent liability situation, even after considerable effort, Fleet was unable to locate a buyer for RSI.

101.    In or about June 2002, a group of RSI managers, led by then CEO executive John Conlin and former CEO Michael McCaffery, offered to purchase certain of RSI's assets in a management buyout.  The RSI management group and FBF negotiated in good faith, but were unable to structure an economically feasible deal.

LITDOCS:490651.2

-19-

102.    Accordingly, on July 12, 2002, RSI filed a Form BDW (Broker Dealer Withdrawal Form), and RSI has withdrawn its registration as a broker-dealer. RSI closed 2002 with a loss of $476 million.

103.    In ceasing its operations, RSI provided the requisite sixty-day notice to the RSI employees prior to the closing of RSI's offices. RSI properly compensated the defendants as RSI employees with pay upon their discharge in accordance with the WARN Act, 29 U.S.C. § 2101 *et seq*. Defendants admit in their NYSE Claim that they were paid amounts under WARN ranging from $115,227 up to $711,000 for the equivalent of 60-days' work. The average WARN payment was $333,564.

104.    In addition, RSI also offered to pay all defendants severance pay based on years of service, in accordance with ERISA, 29 U.S.C. § 1001 *et seq*., provided that defendants execute a release, as per the terms of the RSI Severance Plan.

105.    Defendants refused to execute such a release and, pursuant to the terms of the written agreements between them and RSI, defendants thereupon forfeited certain rights.

106.    RSI has fully compensated the defendants for all services rendered by the defendants as employees of RSI, and no unpaid wages, bonuses or benefits are due or owing to defendants.

## VI.    THE NYSE CLAIM

107.    Apparently not satisfied with the compensation they received, which was in many cases more than what they were entitled, the defendants have filed a claim against the plaintiffs before the NYSE seeking, through various tort and contract based theories, to extract even more money.

108.    As a threshold matter, FBF, Fleet Securities and RSGI are not signatories to any agreement with the defendants to arbitrate any claim before the NYSE. *See* Affidavit of Stephen O. Buff ¶7; Affidavit of Charles E. Sax ¶¶ 4-6. Further, neither FBF nor RSGI are members of the NYSE. *See* Affidavit of Stephen O. Buff ¶¶ 4, 5.

-20-

Moreover, defendants were employed solely by RSI, *see* Affidavit of Charles E. Sax ¶ 5; Affidavit of Lisa G. Bisaccia ¶ 4, and none of FBF, Fleet Securities or RSGI owes defendants any compensation whatsoever.

109. In a "kitchen sink" approach, the defendants tell a convoluted tale of misdeeds, primarily by FBF, that allegedly brought about the ruin of RSI, while glossing over the undeniable and well documented market conditions and the avarice at the highest levels of RSI that truly caused its demise.

110. Among the allegations of tortious conduct asserted by the defendants against FBF in the NYSE are the following:

> Respondents' fraudulent statements and concealments, including misrepresentations regarding Fleet's intent to sell and/or liquidate Robertson Stephens, misrepresentations concerning the value of Robertson Stephens Restricted Units and Fleet's lack of intent to complete the MBO form the basis for Respondents' liability for fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation.
>
> NYSE Claim, p. 16.
>
> * * *
>
> Respondents, by virtue of their superior knowledge of the facts at issue, owed a duty to Claimants. Respondents also owed a duty to Claimants by virtue of Respondents' status as majority shareholders of Robertson Stephens common stock.
>
> Id.
>
> * * *
>
> Respondents violated their fiduciary duty to Claimants by engineering the failed sale and failed MBO of the Robertson Stephens firm, depriving Claimants of all of the value of their Robertson Stephens restricted units, concealing and misrepresenting material facts relating to such sale, the MBO and the value of the restricted units, and other conduct reflecting Respondents' campaign to place the interests of Fleet ahead of those of the Claimants and Robertson Stephens.
>
> Id.

-21-

111. The aforementioned tort claims are, in essence, shareholder derivative claims that can only be asserted by RSGI itself. Furthermore, because none of the defendants were shareholders in RSGI at the time of the alleged acts by FBF, FBF owed them no fiduciary duty.

112. Nor did FBF, as the parent corporation to RSGI, owe the defendants any other duty with respect to how or whether FBF should have made the reasoned determination to sell RSI to the highest bidder or to wind down its affairs. The defendants owned no equity in RSGI at that time, and consequently, have no standing to allege that FBF breached any obligation with respect to RSGI.

113. Nor did FBF have any obligation to consummate the management buyout as the defendants appear to allege in the NYSE Claim. *See* NYSE Claim, pp. 8-9. The management buyout failed because the putative purchasers could not garner enough support for the buy-out among the management team, as well as for other reasons, not because FBF negotiated in bad faith.

114. Moreover, defendants lack any standing to assert a claim on behalf of the proposed purchaser, RSCO Holdings, Ltd., LLC. RSCO Holdings, Ltd. is the only entity which could bring such a claim.

115. These aforementioned allegations are separate and distinct from any allegations made by defendants stemming from their direct employment with RSI, and, consequently, are not arbitrable in any forum.

116. In addition to the tort based claims asserted against FBF, the defendants have also asserted a number of contract based claims based on alleged representations with respect to bonus compensation in 2001 and 2002. *See* NYSE Claim, pp. 12-14.

117. FBF was not defendants' employer and had no contract with them for payment of compensation. Moreover, defendants were subject to express contracts covering the terms of their compensation, and defendants are barred from asserting a claim to anything other than what is provided in their contracts with RSI.

-22-

118. FBF never entered into any agreement with any of the defendants as to the defendants' bonus compensation for 2001 or 2002. The only applicable agreements to which FBF was a party were the Compensation Pool Agreement and the Acquisition Agreements.

119. Though the defendants admit that they "understood that their bonus was a function of the firm's performance, their department's performance and their individual performance," *see* NYSE Claim at p. 12, they nevertheless allege that for 2001, when RSI suffered a net operating loss of $92 million, they did not receive "market compensation."

120. Certain of the defendants had written agreements as to their 2001 bonus and, in some cases, 2002 bonuses. Those explicit agreements control. Those defendants individually negotiated their 2001 bonuses and were paid those amounts in full. They cannot claim more than their contracts provided.

121. The remaining defendants were subject to the terms of the Acquisition Agreement and/or the Compensation Pool Agreement. Pursuant to the terms of their employment contracts, they were entitled to no bonus whatsoever because there were no funds remaining in the Compensation Pool at the end of 2001. Defendants had distributed the entire 55% prior to that date.

122. The bonus the defendants received was solely due to the $79 million subsidy by FBF to RSI's compensation scheme.

123. FBF owes the defendants nothing.

### COUNT I

#### Stay of All Arbitration Proceedings Except the Employment-Related Claims Against RSI

124. Plaintiffs repeat and reallege each and every averment contained in paragraphs 1 through 123 with the same force and effect as if set forth herein.

125. The defendants have commenced an arbitration, filed on December 11, 2002, against the plaintiffs in the New York Stock Exchange, alleging, among other

LITDOCS:490651.2

-23-

things, that the plaintiffs have committed tortious acts against them and failed to meet certain contractual or quasi-contractual obligations.

126. The only claims properly before the NYSE are the employment-based claims against RSI. *See* NYSE Rule 347.

127. The plaintiffs FBF and RSGI are not signatories to any contract with the defendants to arbitrate any dispute before the NYSE, nor are FBF or RSGI members of the NYSE.

128. Consequently, the NYSE has no jurisdiction over FBF or RSGI plaintiffs to adjudicate the claims asserted by the defendants. Accordingly, pursuant to M.G.L. c. 251, § 2(b), this Court should issue an order staying the NYSE arbitration against FBF and RSGI.

129. While Fleet Securities is a member of the NYSE and subject to its jurisdiction, the defendants' claims are not eligible for submission as to Fleet Securities because Fleet Securities was not the defendants' employer and defendants' claims do not arise from Fleet Securities' Exchange-related business.

130. Consequently, the claim against Fleet Securities is not eligible for submission to the NYSE, and this Court should issued an order, pursuant to M.G.L. c. 251, § 2(b), staying the NYSE arbitration against Fleet Securities.

131. Furthermore, the NYSE Claim sets forth claims for breach of fiduciary duty and fraud against FBF (and possibly the other plaintiffs) as the majority shareholder of RSI.

132. These tort-based claims are shareholder derivative claims that cannot be arbitrated before the NYSE. *See* NYSE Rule 600(e). Accordingly, this Court should issue an order on behalf of all plaintiffs staying the NYSE arbitration against all plaintiffs as to the tort claims asserted by the defendants.

-24-

## COUNT II

### Preliminary Injunction

133.    Plaintiffs repeat and reallege each and every averment contained in paragraphs 1 through 123 with the same force and effect as if set forth herein.

134.    The defendants have commenced an arbitration, filed on or about December 11, 2002, against the plaintiffs in the New York Stock Exchange, alleging, among other things, that the plaintiffs have committed tortious acts against them and failed to meet certain contractual or quasi-contractual obligations.

135.    The only claims properly before the NYSE are the employment-based claims against RSI. *See* NYSE Rule 347.

136.    The plaintiffs FBF and RSGI are not signatories to any contract with the defendants to arbitrate any dispute before the NYSE, nor are FBF or RSGI members of the NYSE.

137.    Consequently, the NYSE has no jurisdiction over FBF or RSGI to adjudicate the claims asserted by the defendants.  Accordingly, pursuant to M.G.L. c. 251, § 2(b), this Court should issue an order staying the NYSE arbitration against FBF and RSGI.

138.    While Fleet Securities is a member of the NYSE and subject to its jurisdiction, the defendants' claims are not eligible for submission as to Fleet Securities because Fleet Securities was not the defendants' employer and defendants' claims do not arise from Fleet Securities' Exchange-related business.

139.    Consequently, the claim against Fleet Securities is not eligible for submission to the NYSE, and this Court should issued an order, pursuant to M.G.L. c. 251, § 2(b), staying the NYSE arbitration against Fleet Securities.

140.    Furthermore, the NYSE Claim sets forth claims for breach of fiduciary duty and fraud against FBF (and possibly the other plaintiffs) as the majority shareholder of RSI.

LITDOCS:490651.2

-25-

141.   These tort-based claims are shareholder derivative claims that cannot be arbitrated before the NYSE. *See* NYSE Rule 600(e). Accordingly, this Court should issue an order on behalf of all plaintiffs staying the NYSE arbitration against all plaintiffs as to the tort claims asserted by the defendants.

142.   Should the defendants' claims continue to be adjudicated before the NYSE, FBF, Fleet Securities, and RSGI will suffer immediate and irreparable harm, entitling them to a preliminary injunction enjoining the defendants from maintaining the arbitration action before the NYSE.

## COUNT III

### Declaratory Judgment

143.   Plaintiffs repeat and reallege each and every averment contained in paragraphs 1 through 123 with the same force and effect as if set forth herein.

144.   As set forth above, defendants have asserted a number of claims against the plaintiffs in an arbitration proceeding pending in the NYSE, including breach of fiduciary duty, fraud, negligent misrepresentation and breach of contract, pursuant to which the defendants have claimed a definite interest in a legal relation, right or status vis-à-vis the plaintiffs.

145.   Defendants have also asserted various statutory claims as well as contract and quasi-contract based claims.

146.   Plaintiffs deny that they have committed the conduct alleged in the defendants' NYSE claim and deny that the defendants have any definite interest in any legal relation, right or status vis-a-vis the plaintiffs.

147.   As set forth above, there is an actionable controversy that the Court may resolve through a declaration of the parties' rights and obligations.

-26-

### DEMAND FOR RELIEF

Wherefore, the plaintiffs respectfully request that the Court enter judgment as follows:

1. That this Court order the defendants to stay the arbitration proceeding against FBF, Fleet Securities, and RSGI before the New York Stock Exchange pursuant to M.G.L. c. 251, § 2(b);

2. Alternatively, that this Court enter an order preliminarily enjoining the defendants from arbitrating their claims against FBF, Fleet Securities, and RSGI before the New York Stock Exchange;

3. That this Court order that the defendants stay the NYSE arbitration proceeding against all plaintiffs as to the tort claims for fraud and breach of fiduciary duty which can only be maintained, if at all, as shareholder derivative claims;

4. Alternatively, that this Court enter an order preliminarily enjoining the defendants from arbitrating before the NYSE their tort claims for fraud and breach of fiduciary duty against the plaintiffs;

5. That this Court determine and declare that:

   (a) FBF and RSGI are not subject to the jurisdiction of the NYSE as to any of the claims asserted by the defendants in the NYSE Claim because they are not a party to any agreement with the defendants to arbitrate any disputes before the NYSE and are not members of the NYSE.

   (b) Fleet Securities is not required to arbitrate defendants' claims before the NYSE because the claims are not eligible for submission pursuant to the NYSE Constitution and Rules of Arbitration.

LITDOCS:490651.2

-27-

(c) RSI was the defendants' employer and none of FBF, Fleet Securities, or RSGI ever had any obligation to pay defendants' compensation for 2001 and 2002.

(d) FBF as the majority shareholder of RSGI at the time of alleged tortious actions taken by FBF owed the defendants no fiduciary duty because defendants were not shareholders at that time.

(e) FBF, as the parent corporation of RSGI which owned all of the stock of RSI, owed the defendants no other common law legal duty with respect to FBF's decisions or actions concerning RSI or RSGI at the time of the alleged tortious actions taken by FBF.

(f) Defendants' common law tort claims asserted in the NYSE Claim are not arbitrable because they can only be brought as derivative claims, which the NYSE will not arbitrate.

(g) Defendants lack standing to bring any claim based on the failed management buy-out.

3. For such other and further relief as the Court may deem just and proper.

**FLEETBOSTON FINANCIAL CORPORATION, FLEET SECURITIES, INC., ROBERSTON STEPHENS GROUP, INC., AND ROBERTSON STEPHENS, INC.**

By their attorneys,

Joseph L. Kociubes, BBO # 276360
S. Elaine McChesney, BBO #329090
**BINGHAM McCUTCHEN LLP**
150 Federal Street
Boston, MA  02110
(617) 951-8000

. HEREBY ATTEST AND CERTIFY ON
APRIL 3, 2003 , THAT THE
FOREGOING DOCUMENT IS A FULL, TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE IN MY OFFICE, AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:

ASSISTANT CLERK.

Dated:  March 24, 2003

LITDOCS:490651.2

NEW YORK STOCK EXCHANGE

03-1378 BLS

|  |  |
|---|---|
| ERIC E. ALT, MICHAEL BARR, J.J. BEAGHAN, BRIAN S. BEAN, CHARLES BOLTON, VINCENT BOWEN III, RICHARD A. BRAND, CLARK CALLANDER, GEORGENE CARAMBAT, MICHAEL CASEY, JEFFREY W. COLIN, ALEX DEAN, CHRISTOPHER DODGE, DAVID FULLERTON, PHILIP GARDNER, JONATHAN GOLDMAN, CHRISTOPHER W. GREER, TONY HAERTL, GREGORY C. HOLMES, FREDERICK M. HUGHES, DANIEL HURWITZ, ANDREW KAYE, MAUREEN McCARTHY, KEVIN McGINTY, TODD H. McWILLIAMS, SAMUEL A. MORSE, AGNES MURPHY, DIANE P. MURPHY, DAVID O'BRIAN, JOSEPH PIAZZA, MICHAEL P. PERRELLA, LARRY REHMER, DAVID REILLY, JOHN T. ROSSI, MARK J. SALTER, SCOTT SCHARFMAN, ALLEN SMITH, SCOTT SULLIVAN, STEVEN TISHMAN, TED E. TOBIASON, DANIEL P. WHITE III, and JEFF WINAKER,<br><br>        Claimants,<br><br>FLEETBOSTON FINANCIAL CORPORATION FLEET SECURITIES, INC., ROBERTSON STEPHENS GROUP, INC., and ROBERTSON STEPHENS, INC.,<br><br>        Respondents. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

## AFFIDAVIT OF CHARLES E. SAX

I, Charles E. Sax, hereby depose and state as follows:

1.  I am Chief Financial Officer, Vice President and Treasurer of Fleet Securities, Inc. ("FSI") and Vice President and Treasurer of Quick & Reilly/Fleet Securities, Inc. ("Q&R/FSI"). I have been employed by FSI since October 2000.

-2-

2.      I make this affidavit on personal knowledge, unless otherwise indicated, in further support of the emergency motion for stay of arbitration or, in the alternative, for preliminary injunction brought by FleetBoston Financial Corporation ("FBF"), FSI, Robertson Stephens Group, Inc. ("RSGI"), and Robertson Stephens, Inc. ("RSI").

3.      As Chief Financial Officer of FSI, I am responsible for regulatory reporting and the capital structure of FSI.   I have personal knowledge of the corporate structure and management of FSI.

4.      FSI is a New York corporation and a wholly owned subsidiary of Q&R/FSI, a Delaware corporation that is a holding company for a variety of securities firms and is a direct subsidiary of FBF.  FSI maintains a principal place of business in New York, New York and FSI is not and has never been part of the Robertson Stephens group of companies.

5.      At no time was FSI the employer of any of the claimants.  At no point have any of the claimants entered into any employment or benefits contract with FSI, nor have any of the claimants ever been a covered employee or member in any employment plan or benefit offered by FSI.

6.      At no time has FSI been a subsidiary of the Robertson Stephens group of companies.  The respective boards of directors of the Robertson Stephens companies and FSI have been separate and distinct and at no time has FSI held any ownership interest in any of the Robertson Stephens companies.

Signed this 21 day of March, in the year 2003, under the pains and penalties of perjury.

_Charles E. Sax_

Charles E. Sax

NEW YORK STOCK EXCHANGE

03-1378 BLS

| | |
|---|---|
| ERIC E. ALT, MICHAEL BARR, J.J. BEAGHAN, BRIAN S. BEAN, CHARLES BOLTON, VINCENT BOWEN III, RICHARD A. BRAND, CLARK CALLANDER, GEORGENE CARAMBAT, MICHAEL CASEY, JEFFREY W. COLIN, ALEX DEAN, CHRISTOPHER DODGE, DAVID FULLERTON, PHILIP GARDNER, JONATHAN GOLDMAN, CHRISTOPHER W. GREER, TONY HAERTL, GREGORY C. HOLMES, FREDERICK M. HUGHES, DANIEL HURWITZ, ANDREW KAYE, MAUREEN McCARTHY, KEVIN McGINTY, TODD H. McWILLIAMS, SAMUEL A. MORSE, AGNES MURPHY, DIANE P. MURPHY, DAVID O'BRIAN, JOSEPH PIAZZA, MICHAEL P. PERRELLA, LARRY REHMER, DAVID REILLY, JOHN T. ROSSI, MARK J. SALTER, SCOTT SCHARFMAN, ALLEN SMITH, SCOTT SULLIVAN, STEVEN TISHMAN, TED E. TOBIASON, DANIEL P. WHITE III, and JEFF WINAKER, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Claimants, | ) ) ) |
| FLEETBOSTON FINANCIAL CORPORATION FLEET SECURITIES, INC., ROBERTSON STEPHENS GROUP, INC., and ROBERTSON STEPHENS, INC., | ) ) ) ) ) ) ) |
| Respondents. | ) ) ) |

## AFFIDAVIT OF STEPHEN O. BUFF

I, Stephen O. Buff, hereby depose and state as follows:

1.      I am a Director, Corporate Compliance.  I have been employed at FleetBoston Financial Corporation or one of its' predecessor companies or subsidiaries since August of 1996.

2.      I make this affidavit on personal knowledge, unless otherwise indicated, in further support of the emergency motion for stay of arbitration or, in the alternative, for preliminary

LITDOCS:491647.1

-2-

injunction brought by FleetBoston Financial Corporation ("FBF"), Fleet Securities, Inc. ("Fleet Securities"), Robertson Stephens Group, Inc. ("RSGI"), and Robertson Stephens, Inc. ("RSI").

3.    As Director, Corporate Compliance, I am responsible for functional compliance oversight of the Securities, Capital Markets, and Wealth Management businesses at FleetBoston Financial Corporation. I have personal knowledge of the corporate structure and management of FBF and its subsidiaries for which I am responsible.

4.    FBF is a Rhode Island corporation with a principal place of business in Boston, Massachusetts. FBF is not a member of the New York Stock Exchange.

5.    RSGI is a Delaware corporation and a direct subsidiary of FBF. RSGI is a holding company for Robertson Stephens, Inc. RSGI is not a member of the New York Stock Exchange.

6.    RSI, a Massachusetts corporation, is a wholly owned subsidiary of RSGI, which in turn is a direct subsidiary of FBF.

7.    FBF and RSGI are to the best of my knowledge not signatories to any agreement with the defendants to arbitrate any claim before the NYSE.

Signed this 21st day of March, in the year 2003, under the pains and penalties of perjury.

_____
Stephen O. Buff

LITDOCS:491382.1

| CIVIL ACTION COVER SHEET | DOCKET NO. 03-1378 B. L. S. | Trial Court of Massachusetts Superior Court Department County: Suffolk |
|---|---|---|

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| FLEETBOSTON FINANCIAL CORPORATION, ET AL. | ERIC E. ALT, ET AL. |

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE 617.951.8000 Joseph L. Kociubes, BBO #276360 S. Elaine McChesney, BBO #329090 Bingham McCutchen, 150 Federal Street Board of Bar Overseers number: Boston, MA 02110 | ATTORNEY (if known) Jeffrey L. Liddle Liddle & Robinson 685 Third Avenue New York, NY 10017 |
|---|---|

## Origin Code

### Original Complaint

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| BB.1 | Shareholder Derivative Claims | ( B )* | ( ) Yes  ( X ) No |

**The following is a full and detailed statement of the facts on which plaintiff relies to determine eligibility in to The Business Litigation Session.**

Venue in Suffolk County is proper pursuant to M.G.L. c. 251, § 17, and M.G.L. c. 223, §§ 1, 3 and 8. This case presumptively qualifies as a complex commercial case for the Business Litigation Session because it involves: claims relating to the governance and conduct of the internal affairs of a business enterprise (category a); shareholder derivative claims and claims relating to securities transactions (category b); claims involving alleged breaches of fiduciary duties featuring complex factual and legal issues (category c); and claims arising from transactions with banks and brokerage firms featuring complex factual and legal issues (category g). Specifically, Plaintiffs seek a declaratory judgment staying Defendants' impermissible attempt to arbitrate breach of fiduciary duty, employment, and shareholder derivative claims, as well as declarations regarding the proper valuation of Defendants' shares in a now-defunct enterprise and the statutory and common law duties owed by Plaintiffs to Defendants related to Defendants' employment, and subsequent termination, as securities dealers and investment bankers.

**\* A Special Tracking Order shall be created by the Presiding Justice of the Business Litigation Session at the Initial Rule 16 Conference.**

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____S. Elaine McChesney_____    DATE: 3/24/03

ACTO-6 mtc005-11/99

I HEREBY ATTEST AND CERTIFY ON

APRIL 3, 2003 , THAT THE

FOREGOING DOCUMENT IS A FULL, TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE IN MY OFFICE, AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN CLERK / MAGISTRATE SUFFOLK SUPERIOR CIVIL COURT DEPARTMENT OF THE TRIAL COURT

BY: _____
ASSISTANT CLERK.

3

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.

SUPERIOR COURT
DEPARTMENT OF THE
TRIAL COURT

BUSINESS SECTION

03-1378 BLS

FLEETBOSTON FINANCIAL CORP., )
FLEET SECURITIES, INC., )
ROBERTSON STEPHENS, INC. AND )
ROBERTSON STEPHENS GROUP, INC., )
)
                       Plaintiffs, )
)
          v. )
)
ERIC E. ALT et al., )
)
                   Defendants. )
)

CIVIL ACTION
NO.

## MOTION TO APPOINT SPECIAL PROCESS SERVER

Pursuant to Rule 4(c) of the Massachusetts Rules of Civil Procedure, the plaintiffs move that Beacon Hill Research & Service Group, Inc., 314 Washington Street, Boston, Massachusetts 02108, be appointed as special process server empowered to serve the Summons and Complaint, Emergency Motion to Stay or, in the Alternative, for Preliminary Injunction, and all other pleadings or subpoenas generated by the plaintiffs in this proceeding. Grounds for this motion are that (1) the plaintiffs need to expedite service of the Summons, Complaint, Emergency Motion to Stay or, in the Alternative, for Preliminary Injunction to protect their rights; and (2) the appointment of Beacon Hill Research & Service Group, Inc. as special process server will expedite the service of said pleadings.

Accordingly, the plaintiffs request that this motion be granted.

LITDOCS:491601.1

FLEETBOSTON FINANCIAL
CORPORATION, FLEET SECURITIES, INC.,
ROBERTSON STEPHENS, INC., AND
ROBERSTON STEPHENS GROUP, INC.,

By their attorneys,

_Joseph L. Kociubes, BBO #276360_
S. Elaine McChesney, BBO #329090
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110
(617) 951-8000

I HEREBY ATTEST AND CERTIFY ON

APRIL 3, 2003 THAT THE

FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:

ASSISTANT CLERK.

Dated: March 24, 2003

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney(s) of record for each other party by mail (by hand) on March 24, 2003.

Matthew L. Mitchell

-2-

LITDOCS:491601.1

4

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.

SUPERIOR COURT
DEPARTMENT OF THE
TRIAL COURT    03-1378 BLS

BUSINESS SECTION

FLEETBOSTON FINANCIAL CORP.,    )
FLEET SECURITIES, INC.,    )
ROBERTSON STEPHENS, INC. AND    )
ROBERTSON STEPHENS GROUP, INC.,    )
)
Plaintiffs,    )
)
v.    )    CIVIL ACTION
)    NO.
ERIC E. ALT et al.,    )
)
Defendants.    )
)

**PLAINTIFFS' EMERGENCY MOTION FOR STAY OF ARBITRATION OR,
IN THE ALTERNATIVE, FOR PRELIMINARY INJUNCTION**

Plaintiffs FleetBoston Financial Corporation ("FBF"), Fleet Securities, Inc. ("Fleet Securities"), Robertson Stephens Group, Inc. ("RSGI"), and Robertson Stephens, Inc. ("RSI") hereby move this Honorable Court pursuant to M.G.L. c. 251, § 2(b), to stay the arbitration proceeding brought against the plaintiffs by the above-named defendants, former RSI employees, before the New York Stock Exchange (the "NYSE Claim"), entitled Alt et al. v. FleetBoston Financial Corporation et al., Docket # 2002-011191. Alternatively, plaintiffs seek a preliminary injunction enjoining the defendants from continuing to arbitrate the aforementioned claims. As set forth more fully in the accompanying Memorandum of Law the NYSE Claim should be stayed or, alternatively, enjoined because:

1.    Neither FBF nor RSGI are members of the NYSE, and neither FBF nor RSGI are signatories to any agreement to arbitrate any of the defendants' claims before the

LITDOCS:491439.1

FLEETBOSTON FINANCIAL
CORPORATION, FLEET SECURITIES, INC.,
ROBERTSON STEPHENS, INC., AND
ROBERSTON STEPHENS GROUP, INC.,

By their attorneys,

ι HEREBY ATTEST AND CERTIFY ON

__APRIL  3,  2003__ THAT THE

FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____

ASSISTANT CLERK.

_____
Joseph L. Kociubes, BBO #276360
S. Elaine McChesney, BBO #329090
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA  02110
(617) 951-8000

Dated:  March 24, 2003

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney(s) of record for each other party by mail (by hand) on March 24, 2003.

_____
Matthew L. Mitchell

-3-

LITDOCS:491439.1

5

03-1378 βᴄˢ

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.

SUFFOLK, SS.          SUPERIOR COURT DEPT.  SUPERIOR COURT
(date) _____  DEPARTMENT OF THE
Notice ordered issued herein returnable TRIAL COURT     2 0
at the _____  2003
on _____  BUSINESS SECTION
to show cause why _____

should not _____  )
FLEETBOSTON FINANCIAL CORP.,        )
FLEET SECURITIES, INC. By the Court, _____  )
ROBERTSON STEPHENS, INC. AND         )
ROBERTSON STEPHENS GROUP, INC.       )
                    Assistant Clerk        )
                                                )
                        Plaintiffs,            )
                                                )
              v.                                )    CIVIL ACTION
                                                )    NO.
ERIC E. ALT et al.,                            )
                                                )
                        Defendants.            )
                                                )

### MOTION FOR SHORT ORDER OF NOTICE

Plaintiffs move this Court for an order that a hearing be held on short notice on its Emergency Motion to Stay or, in the Alternative, for Preliminary Injunction. Plaintiffs request that a hearing on the motions be held as soon as convenient for this Court. As set forth in the Emergency Motion to Stay or, in the Alternative, for Preliminary Injunction, there are adequate grounds for a hearing on this issue on short notice. Moreover, M.G.L. c. 251, § 2(b) requires that an application for stay of an arbitration proceeding be "forthwith and summarily determined."

WHEREFORE, the plaintiffs respectfully request that the Court shorten the period of notice required by Mass. R. Civ. P. 6(c).

LITDOCS:491602.1

**FLEETBOSTON FINANCIAL CORPORATION, FLEET SECURITIES, INC., ROBERTSON STEPHENS, INC., AND ROBERSTON STEPHENS GROUP, INC.,**

. HEREBY ATTEST AND CERTIFY ON

<u>APRIL 3, 2003</u> , THAT THE

FOREGOING DOCUMENT IS A FULL, TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE IN MY OFFICE, AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____

ASSISTANT CLERK.

Dated: March 24, 2003

By their attorneys,

_____
Joseph L. Kociubes, BBO #276360
S. Elaine McChesney, BBO #329090
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110
(617) 951-8000

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney(s) of record for each other party by mail (by hand) on March 24, 2003.

_____
Matthew L. Mitchell

-2-

LITDOCS:491602.1

COMMONWEALTH OF MASSACHUSETTS

**6**

SUFFOLK, ss.

SUPERIOR COURT
CIVIL ACTION
NO. 03-1378 BLS2
(Judge Botsford)

FLEETBOSTON FINANCIAL CORP., et al.

vs.

ERIC ALT, et al.

NOTICE OF ACCEPTANCE INTO
BUSINESS LITIGATION SESSION

This matter has been accepted into the Suffolk Business Litigation Session. It has been assigned to Judge Botsford.

Hereafter, as shown above, all parties must include the initials "BLS2" at the end of the docket number on all filings. Also, Judge Botsford's name must be included.

Counsel for the plaintiff(s) is hereby advised that within seven (7) days of the filing of an appearance, answer, motion or other response to the complaint by or on behalf of the defendant(s) which has been served with process within the time limitation of Mass. R. Civ. P. Rule 4(j), or such other time as may be modified by the Court, he or she shall send notice thereof to the Session Clerk, Business Litigation Session, Courtroom 20, Suffolk Superior Court, 90 Devonshire Street, Boston, MA 02109.

Upon receipt of such notice, Judge Botsford will issue a Notice of Initial Rule 16 Conference for purposes of meeting with all counsel to plan for the litigation and resolution of this matter. If possible, the Court requests counsel for the plaintiff(s) to confer with counsel for the defendant(s) and to suggest to the Court a range of dates available for all parties for this purpose and to include those dates in the notice. The Court, however, retains the discretion to schedule the hearing at a time that fits within its own schedule.

_____
Allan van Gestel, Presiding Justice
Business Litigation Session

DATED:    March 25, 2003

I HEREBY ATTEST AND CERTIFY ON

APRIL 3, 2003, THAT THE

FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____
ASSISTANT CLERK.

NEW YORK STOCK EXCHANGE

03-1379 BLS

| | |
|---|---|
| ERIC E. ALT, MICHAEL BARR, J.J. BEAGHAN, BRIAN S. BEAN, CHARLES BOLTON, VINCENT BOWEN III, RICHARD A. BRAND, CLARK CALLANDER, GEORGENE CARAMBAT, MICHAEL CASEY, JEFFREY W. COLIN, ALEX DEAN, CHRISTOPHER DODGE, DAVID FULLERTON, PHILIP GARDNER, JONATHAN GOLDMAN, CHRISTOPHER W. GREER, TONY HAERTL, GREGORY C. HOLMES, FREDERICK M. HUGHES, DANIEL HURWITZ, ANDREW KAYE, MAUREEN McCARTHY, KEVIN McGINTY, TODD H. McWILLIAMS, SAMUEL A. MORSE, AGNES MURPHY, DIANE P. MURPHY, DAVID O'BRIAN, JOSEPH PIAZZA, MICHAEL P. PERRELLA, LARRY REHMER, DAVID REILLY, JOHN T. ROSSI, MARK J. SALTER, SCOTT SCHARFMAN, ALLEN SMITH, SCOTT SULLIVAN, STEVEN TISHMAN, TED E. TOBIASON, DANIEL P. WHITE III, and JEFF WINAKER,<br><br>Claimants,<br><br>FLEETBOSTON FINANCIAL CORPORATION FLEET SECURITIES, INC., ROBERTSON STEPHENS GROUP, INC., and ROBERTSON STEPHENS, INC.,<br><br>Respondents. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

## AFFIDAVIT OF LISA G. BISACCIA

I, Lisa G. Bisaccia, hereby depose and state as follows:

1.      I am the Director of Corporate Compensation for FleetBoston Financial Corporation.

2.      I make this affidavit on personal knowledge, unless otherwise indicated, in further support of the emergency motion for stay of arbitration or, in the alternative, for preliminary

LITDOCS:491382.1

-2-

injunction brought by FleetBoston Financial Corporation ("FBF"), Fleet Securities, Inc. ("Fleet Securities"), Robertson Stephens Group, Inc. ("RSGI"), and Robertson Stephens, Inc. ("RSI").

3.    As Director of Corporate Compensation, I have personal knowledge of the facts set forth below.

4.    None of the defendants in this action are former employees of FBF, Fleet Securities, or RSGI.

5.    The defendants are all former employees of RSI, with the limited exception of one or more defendants who are former employees of Robertson Stephens International, Ltd. an indirect subsidiary of RSGI.

Signed this 23d day of March, in the year 2003, under the pains and penalties of perjury.

Lisa G. Bisaccia

I HEREBY ATTEST AND CERTIFY ON

APRIL 3, 2003 , THAT THE

FOREGOING DOCUMENT IS A FULL, TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE IN MY OFFICE, AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:

ASSISTANT CLERK.

LITDOCS:401882.1